KEKER & VAN NEST, LLP
ELLIOT R. PETERS - #158708
DAVID J. SILBERT - #173128
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendants
CYRIL V. SMITH and ZUCKERMAN SPAEDER LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN LYNCH,<br>Plaintiff,<br>v.<br>CYRIL V. SMITH and ZUCKER SPAEDER LLP,<br>Defendants. | Case No. C 08 00728 JF RS<br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE TO TRANSFER VENUE; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT**<br>Date: Fri., May 2, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. Jeremy Fogel<br>Date Comp. Filed: October 18, 2007<br>Trial Date: None set. |

# TABLE OF CONTENTS


**Page**

NOTICE OF MOTION....1

MEMORANDUM OF POINTS AND AUTHORITIES....1

I. STATEMENT OF FACTS....1

II. ARGUMENT....3

A. The Case Should Be Dismissed Because Venue Is Improper In This District....3

B. No Defendant Resides in This District....4

C. The Acts Giving Rise to the Lawsuit Happened in Maryland and Washington, D.C. -- Not California....4

D. No Venue Exists Under §1391(a)(3) Because the Suit Could Have Been Brought in Maryland....7

E. Alternatively, This Case Should Be Transferred Under § 1404(a) For The Convenience Of The Parties And Witnesses....9

III. CONCLUSION....11

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES


Astor Holdings, Inc. v. Steefle, Levitt & Weiss, P.C.
2003 WL 21108316 .......... 7

Berube v. Brister
140 F.R.D. 258 .......... 7

Clark v. Kick
79 F.Supp.2d 747 .......... 6, 11

Cosgrove v. Bartolotta
150 F.3d 729 .......... 4

Coupons, Inc. v. Efros
2006 WL 37036 at 7 .......... 7

Couri v. Fisher
147 Bankr. 349, 357 .......... 11

Engel v. CBS, Inc.
886 F.Supp. 728 .......... 6, 10, 11

Georg F. Martin Co. v. Royal Ins. Co. of America
2004 WL 1125048 .......... 11

Henshell Corp. v. Childerston
1999 WL 549027 at 3-4 .......... 7

Jani v. Bell
2006 WL 3623047 .......... 2

JBG/JER Shady Grove, L.L.C. v. Eastman Kodak Co.
127 F.Supp.2d 700 .......... 4

Johnson v. Nextel Comms., Inc.
2007 WL 2814649, 4 .......... 9

Mallen & Smith, Legal Malpractice
§ 33:33 at 998 §§2007 .......... 6

Mudge Rose Guthrie Alexander & Ferdon v. Pickett
11 F.Supp.2d 449 .......... 4

Paul, Hastings v. City of Tulsa
245 F.Supp.2d 1248 .......... 6

Person v. Lemelson
1990 WL 144208 .......... 9

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page(s)**

Reisman v. KPMG Peat Marwick LLP
965 F.Supp. 165 ....................4

Rosquist v. Soo Line R.R.
692 F.2d 1107 ....................10

Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.
927 F.Supp. 731 ....................7

Stratagene v. Parsons Behle & Latimer
315 F.Supp.2d 765 ....................11

Tosco Corp. v. Sun Co., Inc.
1995 WL 165888 ....................8

U.S. Aluminum Corp. v. Kawneer Co.
694 F.2d 193 ....................9

Van Dusen v. Barrack
376 U.S. 612, 84 S.Ct. 805 [11 L.Ed.2d 945] ....................11

Whiteman v. Grand Wailea Resort
1999 WL 163044 ....................8

Zalutsky, Pinski & DiGiacomo v. Kleinman
747 F.Supp. 457 ....................10

**DOCKETED CASES**

Jani v. Bert Bell/Pete Rozelle NFL Player Retirement Plan,
No. 04-1606, 2005 WL 1115250 ....................2

Benjamin Lynch v. The Bert Bell/Pete Rozelle NFL Player Retirement Plan, et al.,
No. 1:07-cv-01696 ....................2

**FEDERAL STATUTES**

28 U.S.C. § 1332 ....................3
1391 ....................1
1404 ....................1
1406 ....................11
1406(a) ....................11

Fed. R. Civ. P. 12(b) ....................1
12(b)(3) ....................1

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday, May 2, 2008, at 9:00 a.m., in the above-captioned Court, located at U. S. Courthouse, 450 Golden Gate Avenue, Courtroom 3, 5th Floor, San Francisco, California 94102, counsel for moving parties Defendants CYRIL V. SMITH and ZUCKERMAN SPAEDER LLP will, and hereby do, move this Court to dismiss this case for improper venue, or in the alternative to transfer venue.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Affidavit of Cyril V. Smith filed herewith, the pleadings, records, and papers on file in this action, and on such argument and evidence as may be presented at the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Cyril V. Smith and Zuckerman Spaeder LLP ("Defendants") move this Court, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §§ 1391, 1404 and 1406(a), to dismiss the complaint for improper venue or, in the alternative, to transfer the case to the District of Maryland, where both Defendants reside.

## I. STATEMENT OF FACTS

The Complaint in this matter was filed on October 15, 2007 (and an Amended Complaint ("Am. Compl.") a day later) in Superior Court for the County of Santa Clara and was removed to this Court on January 31, 2008. The plaintiff, Benjamin Lynch, is a former professional football player who lives in Santa Clara, California. (Am. Compl., ¶ 1) The Complaint alleges that Defendant Zuckerman Spaeder LLP ("ZS") is a law firm with its largest office in Washington, D.C. and additional offices in Baltimore, Maryland, among others. (Am. Compl., ¶ 1) ZS has no offices in this District, and none of its partners resides in California. (Declaration of Cyril V. Smith, ¶ 3) Defendant Cyril V. Smith ("Smith") is a partner in the Baltimore office of ZS and a member of the Maryland and District of Columbia bars, who resides in Baltimore, Maryland. (Id., ¶¶ 1-2; Am. Compl., ¶ 1)

This case arises from Smith's successful representation of Lynch in a claim for disability

benefits against the pension plan maintained by the National Football League, the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "NFL Plan"). The Plan's offices are located in Baltimore, Maryland. Before representing Lynch, Smith won the first case ever against the NFL Plan, for the estate of ex-NFL player Mike Webster of the Pittsburgh Steelers. Smith won the Webster case in federal district court in Baltimore in 2005, Jani v. Bert Bell/Pete Rozelle NFL Player Retirement Plan, No. 04-1606, 2005 WL 1115250 (D. Md. April 26, 2005), and that decision was affirmed on appeal by the Fourth Circuit in December 2006. Jani v. Bell, 2006 WL 3623047 (4th Cir. Dec. 13, 2006). (Smith Decl. ¶ 4) At the invitation of the House Judiciary Committee, Smith testified before Congress in June 2007 about deep-seated problems in the administration of the NFL Plan. (Am. Compl., ¶ 42)

Lynch contacted Smith in 2006, after Smith had won the Webster case in the District Court in Baltimore, to request his assistance in prosecuting Lynch's disability claim against the NFL Plan. (Am. Compl., p. 2) All discussions took place by telephone, email and letter; neither Smith nor any other ZS attorney traveled to California at any time in connection with the matter. (Smith Decl., ¶ 5)

Smith and ZS ultimately agreed to represent Lynch in his claim against the NFL Plan. Smith prepared a complaint against the NFL Plan and filed it on June 27, 2007 in the U.S. District Court for the District of Maryland's Northern Division, which sits in Baltimore. (Am. Compl., ¶ 15) *See* Benjamin Lynch v. The Bert Bell/Pete Rozelle NFL Player Retirement Plan, et al., No. 1:07-cv-01696 WMN (D. Md.) (the "Baltimore Case").[1] The Defendants in the Baltimore Case were represented by a Washington, D.C. law firm, the Groom Law Group. (Smith Decl., ¶ 6)

Shortly after the Baltimore Case was filed, the NFL Plan offered to settle Lynch's claims by providing "almost everything Lynch had asked for in his appeal." (Am. Compl., ¶ 20) Smith negotiated this resolution by telephone and email with the NFL Plan's Washington, D.C. attorneys, keeping Lynch informed by telephone and email. (Smith Decl., ¶ 7) The parties

---

[1] The Baltimore Case named a second defendant, The NFL Player Supplemental Disability Plan, which provides additional benefits to retired NFL Players in excess of certain

eventually reached an agreement to settle the case by paying Lynch more than $800,000, plus continuing disability benefits of $225,000 per year. (Am. Compl., ¶ 33) Lynch has nevertheless refused to execute a settlement agreement, claiming that Smith and his firm should charge less than is called for by a written contingent fee agreement. As a result, the Baltimore Case remains pending in Maryland. Lynch has not paid Smith or ZS anything for their services to date. (Smith Decl., ¶ 10)

Maryland law provides for the imposition of an attorney's lien for services which result in a "settlement, judgment or award" for a client." Md. Code Ann., Bus. Occ. & Profs. § 10-501; Md. Rule 2-652(b). (The District of Columbia imposes a parallel duty on attorneys holding funds, D.C. RPC 1.15.) By letter dated Oct. 18, 2007, Smith instructed the NFL Plan's attorneys to hold ZS's contingent fee until the matter was resolved. (Smith Decl., ¶ 10)

Lynch filed suit against Smith and ZS in Superior Court for the County of Santa Clara on October 15, 2007. He did not effect service. Smith and ZS agreed to, and did, accept service on January 3 and 12, respectively. Defendants jointly filed a timely Notice of Removal to this Court on January 31, 2008, asserting as the sole basis for removal jurisdiction diversity of citizenship under 28 U.S.C. § 1332.

## II. ARGUMENT

### A. The Case Should Be Dismissed Because Venue Is Improper In This District

In diversity cases, venue is governed exclusively by 28 U.S.C. § 1391(a), which provides that:

> a. A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
>
> 1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

---

ERISA limits. Like the NFL Plan, the Supplemental Plan is located in Baltimore, Maryland.

3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

None of § 1391's provisions allows venue in this District.

**B. No Defendant Resides in This District.**

Under sub-section (a)(1), suit may be brought where any defendant resides, provided that all defendants reside in the same state. As a limited liability partnership organized under the law of Maryland (Smith Decl. ¶ 2), Defendant ZS is deemed to have the citizenship of each of its partners. Mudge Rose Guthrie Alexander & Ferdon v. Pickett, 11 F.Supp.2d 449, 451-52 (S.D.N.Y. 1998) (for the purpose of determining diversity jurisdiction, a limited liability partnership has the citizenship of each of its partners); Reisman v. KPMG Peat Marwick LLP, 965 F.Supp. 165, 176 (D. Mass. 1997) (same); Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998) (limited liability corporation has the citizenship of each of its members); JBG/JER Shady Grove, L.L.C. v. Eastman Kodak Co., 127 F. Supp. 2d 700, 701 (D. Md. 2001) (same). Many ZS partners, including Smith, reside in Maryland (Smith Decl., ¶ 3), making that a permissible venue for this action. No ZS partner, however, resides in California (id.), and § 1391(a)(1) thus provides no basis for venue in this District.

**C. The Acts Giving Rise to the Lawsuit Happened in Maryland and Washington, D.C.—Not California.**

Under sub-section (a)(2), venue is permitted in the district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Taking the second prong of the statute first, the "property" that is the subject of this dispute consists of the disputed attorneys' fees, which are in turn a share of the disability benefits that Smith obtained for Lynch in the Baltimore Case. Those disability benefits have not yet been paid, and they remain subject to a lien, in the possession, custody and control of the NFL Plan, which is located in Baltimore, Maryland. (Smith Decl., ¶ 10) The property in dispute is thus situated in Maryland.

It is likewise clear that, pursuant to § 1391(a)(2), "a substantial part of the events or

omissions giving rise to the claim occurred" in Maryland:

The work that Smith and ZS undertook for Lynch related to the preparation, filing and settlement of a lawsuit filed in federal court in Maryland. See Am. Compl. ¶¶ 15, 32.

Smith provided the legal services from ZS's office in Baltimore, Maryland, where he researched and drafted the complaint and negotiated the proposed settlement. *See, e.g.*, Am. Compl. ¶¶ 1 (Smith's office is in Baltimore, Maryland), 7 (Smith reviewed documents from Lynch in his Baltimore, Maryland office), 10 (Smith contacted attorneys for the Plan), 15 (Smith drafted a complaint and filed in federal court in Maryland), 25 (Smith told by opposing counsel that Plan agreed to all of the relief sought by Lynch), 26 (Smith negotiated with opposing counsel and edited settlement documents); *see generally* Am. Compl. ¶ 32 (summarizing allegations concerning Smith's work on the litigation); *see also* Smith Decl. ¶¶ 5, 7 (foregoing activities took place from Smith's office in Baltimore, Maryland or while on vacation with family in New York).

The contingent fee agreement at issue in this lawsuit was also drafted in Baltimore, Maryland. Am. Compl. ¶¶ 1, 17-18, 53 (Smith drafted the contingency fee agreement, and ZS, whose principal office is in Washington, D.C., approved it); *see also* Smith Decl. ¶ 8 (Smith drafted the contingency fee agreement at his office in Baltimore, Maryland).

Smith made comments "in the Daily Record, a Baltimore newspaper" on June 26, 2007, the day before the Baltimore Case was filed. (Am. Compl., ¶ 42)

Lynch admits that the Maryland Rules of Professional Conduct and Maryland law of fiduciary duty should apply to Smith and ZS's actions. (Am. Compl., ¶ 30, 38)[2]

In short, the Complaint alleges that a client from California retained an attorney in Maryland to sue a Maryland defendant in federal court in Maryland. The legal services underlying this fee dispute were all performed in Maryland, and the fee agreement itself was drafted in Maryland. So that there is no mistake about the center of gravity of these events,

---

[2] The remaining events of which Lynch complains took place in Washington, D.C., the site of the firm's principal office. (Smith Decl. ¶¶ 3, 9) (firm's principal office is in Washington, D.C.); see Am. Compl. ¶¶ 17, 40 (Smith supposedly learned that the case would settle and "hurriedly sought, and received approval for a contingency fee agreement from his law firm.").

Lynch contends that his claims are governed by Maryland law.

"If the lawyer handled a matter in the lawyer's state of residence, that state is usually the proper venue." Mallen & Smith, *Legal Malpractice* § 33:33 at 998 ((2007 ed.) Where a client from State A retains an attorney in State B to sue a third party in State B, and the attorney performs all of the legal work in State B, there can be no question that "a substantial part of the event or omissions" underlying a dispute about the representation took place in State B. Courts therefore routinely hold that State B, and not State A, is the proper venue for litigation concerning the representation. For example, in Engel v. CBS, Inc., 886 F. Supp. 728 (C.D. Cal. 2005), a California resident retained a New York attorney to prosecute litigation in the Southern District of New York and thereafter sued his former lawyer in Los Angeles. The court dismissed for improper venue under § 1391(a)(2), relying on the fact that the defendant was licensed in New York and "pursued the underlying action" in that state. *Id.* at 732. The court also found that plaintiff's "California contract negotiations," and his claim of injury in California, like Plaintiff Lynch's claims here, did not constitute "a substantial part of the events or omissions" underlying the claim. *Id.* Rather, the court held that "[t]he underlying lawsuit [in New York] . . . is the substantial event giving rise to the claim." *Id.* at 733.

Similarly, in another attorney fee dispute between an Atlanta-based law firm and an Oklahoma client, the court in Paul, Hastings v. City of Tulsa, 245 F. Supp. 2d 1248 (N.D. Ga. 2002), found that a substantial part of the events occurred in Atlanta. "The vast majority of the work for the litigation was performed in Atlanta, and Paul Hastings is seeking payment for this work. . . . The only complete set of litigation files was maintained in Atlanta, and Tulsa sent payment and contract amendments to Atlanta." *Id.* at 1259-60.

In Clark v. Kick, 79 F. Supp. 2d 747 (S.D.Tex. 2000), a Texas law firm sued a California firm concerning the apportionment of legal fees earned through a contingent fee agreement in which they recovered $2.5 million for the plaintiff. The Texas court found venue to be proper in Texas because (1) the fees arose from an underlying case before it in Texas; (2) the Texas attorneys performed the fee-generating work in Texas; and (3) the property in dispute was subject to a lien on the proceeds in Texas. *Id.* at 754. Although some of the negotiations of the

contingent fee agreement took place in California, the court found that a substantial part of the events or omissions took place in Texas. *Id.*

Indeed, in legal malpractice matters, courts routinely find that venue is proper only in districts where the attorneys resided, prepared for and litigated the underlying action. *See, e.g.,* Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C., 927 F. Supp. 731, 736 (S.D.N.Y. 1996); Berube v. Brister, 140 F.R.D. 258, 260 (D.R.I. 1992) (venue improper in Rhode Island for legal malpractice claim against Massachusetts law firm based on firm's representation in Massachusetts litigation concerning property damage in Massachusetts); *see also* Henshell Corp. v. Childerston, 1999 WL 549027 at *3-4 (E.D.Pa. 1999) (no venue in Pennsylvania for legal malpractice by Delaware lawyer in Delaware state court litigation) (collecting cases).

Here, as in Engel, and Paul Hastings and Kick, as well as in the legal malpractice cases, the representation of Mr. Lynch was directed to Maryland, Smith's location and the forum for Lynch's suit against the Plan. Neither Smith nor any ZS attorney set foot in California in connection with the underlying claim.[3] There is no colorable claim that a "*substantial* part" of the alleged acts and omissions took place in the Northern District of California, and venue here is plainly improper under § 1391(a)(2).

**D. No Venue Exists Under §1391(a)(3) Because the Suit Could Have Been Brought in Maryland**

Because this suit could have been brought in Maryland, Lynch cannot invoke the fallback venue alternative of § 1391(a)(3). That provision allows suit in any district in which any

---

[3] Indeed, even where the lawyer traveled to the client's home state for a personal meeting, venue does not lie in that district if most of the legal services were provided from the lawyer's office in another state. In Astor Holdings, Inc. v. Steefle, Levitt & Weiss, P.C., 2003 WL 21108316 (S.D.N.Y. 2003), the court transferred the case from New York to San Francisco because of improper venue under § 1391(a)(2). There, although the New York client alleged that the San Francisco lawyer provided some negligent advice during a personal meeting in New York, the court nonetheless concluded that, because "most of [defendant's] allegedly erroneous advice originated from his office in San Francisco," the advice given at the New York meeting "cannot be considered a *substantial* part of [defendant's] overall malpractice, the majority of which occurred in California." *Id.* at *7, emphasis in original. *See also* Coupons, Inc. v. Efros, 2006 WL 37036 at *7 (N.D.Cal. 2006) (transferring legal malpractice case from California to Washington, D.C., where defendant attorneys maintained offices and performed "the vast majority of the litigation services at issue" in connection with a case pending in Maryland).

defendant is subject to personal jurisdiction only "if there is no district in which the action may otherwise be brought."

Sub-section (a)(3) means what it says—it does not apply unless there is no alternative venue. In Jorgens v. P&V, Inc., 2007 WL 840309 (E.D. Cal. 2007), the court expressly rejected the argument that venue was proper because the corporate defendant had minimum contacts with California. As the court explained:

[I]f there was not a district in which the action could otherwise be brought, any district where a defendant is subject to personal jurisdiction would be proper under Section 1391(a)(3). However, because the action clearly could be brought in the District of Idaho, because the defendants reside there (satisfying Section 1391(a)(1)), and the events giving rise to the cause of action occurred in Idaho (satisfying Section 1391(a)(2)), this subsection does not apply. Accordingly, venue is improper in this district.

*Id.* at *3 (dismissing, for lack of venue, California resident's suit against an Idaho company after one of its drivers injured plaintiff in a collision in Idaho).

Similarly, in Whiteman v. Grand Wailea Resort, 1999 WL 163044 (N.D. Cal. 1999), a California resident brought suit in California against a Delaware corporation with its principal place of business in Hawaii for an injury sustained at the defendant's Hawaii resort. Here, too, the court dismissed for lack of venue, emphasizing that the fallback provision "is limited to cases in which 'there is no district in which the action may otherwise be brought.' Plaintiff clearly could have filed suit in the District of Hawaii under either § 1391(a)(1) or § 1391(a)(2)." *Id.* at *2. And, in Tosco Corp. v. Sun Co., Inc., 1995 WL 165888 (N.D. Cal. 2005), this Court dismissed for improper venue, holding that "[plaintiff] further fails to satisfy the third venue test because it concedes that there may be 'another district in which the action may otherwise be brought'" under sub-section (a)(3).

Here, the claims at issue could clearly have been brought in the District of Maryland, based on either the residence of all defendants (under sub-section (a)(1)) or the location of a substantial portion of the disputed property or the alleged acts or omissions (under sub-section (a)(2)). Therefore, plaintiff cannot rely on sub-section (a)(3) to lay venue in this District.

**E. Alternatively, This Case Should Be Transferred Under § 1404(a) For The Convenience Of The Parties And Witnesses**

Section 1404(a) of Title 28 provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the foregoing discussion makes clear, this case could have been, and should have been, brought in the District of Maryland. But even if this Court found that venue was permissible under some portion of § 1391(a), it should exercise its power to transfer this case to Maryland under the terms of § 1404(a).

Transfer motions are committed to the sound discretion of this Court, U.S. Aluminum Corp. v. Kawneer Co., 694 F.2d 193, 195 (9th Cir. 1982), and a variety of factors may be considered, including the convenience of the parties and witnesses; relative ease of access to proof; plaintiff's choice of forum; the forum's familiarity with governing law; the feasibility of consolidation with other claims; any local interest in the controversy; and trial efficiency. Georg F. Martin Co. v. Royal Ins. Co. of America, 2004 WL 1125048 (N.D. Cal. 2004).

Here, plaintiff's choice of forum is entitled to little weight. Plaintiff Lynch has already lost his chosen forum in state court, by virtue of the federal removal statute. *See* Johnson v. Nextel Comms., Inc., 2007 WL 2814649, *4 (D.N.J. 2007) (no weight to plaintiff's choice of forum where case has been properly removed to federal court).

In evaluating the balance of the factors, it is clear that a claim arising from an agreement for legal services – particularly a contingent fee agreement – should be prosecuted where the underlying litigation was filed – in Baltimore, Maryland. In Person v. Lemelson, 1990 WL 144208 (S.D.N.Y. 1990), for example, an attorney filed suit in the Southern District of New York, claiming a contingent fee for work previously performed in a Chicago case. The New York court did not hesitate to transfer venue to Chicago, the site of the fee-generating litigation. As the court noted,

> Fundamental to resolving this dispute is whether [the attorney] might be entitled . . . to a quantum merit award for his services or a one-sixth interest in any settlement based on contract. A decision on which remedy is appropriate would be more proper before the Chicago court. This inquiry will necessarily involve examining [the attorney's] compliance with local court rules in the Chicago action. [*Id.* at *3.]

Similarly, "district courts have supervisory jurisdiction over contingent fee contracts for services rendered in cases before them." *Id.* Moreover, the court before whom the underlying case is pending has "a stake in attorney's fees contracts because they reflect directly on the court and its bar." *Id.* (citing Rosquist v. Soo Line R.R., 692 F.2d 1107, 1111 (7th Cir. 1982). And although the plaintiff might have suffered some inconvenience from the transfer in that case, "[d]eposition testimony . . . is an available alternative to live testimony." *Id.* In the final analysis, as here, the facts in that case "outweigh[ed] the presumption in favor of the plaintiff's choice of forum. Most of the evidence centers around litigation before the Chicago court and the application and interpretation of its local rules." *Id.* at 4.

So too here, where Lynch has already alleged that Maryland law and its Rules of Professional Conduct govern his claims (and where the funds in the control of the Maryland Plan are presently subject to an attorney's lien), it is plain that a Maryland court should resolve those claims. Likewise, the center of gravity for the witnesses and sources of proof is in Maryland, not California: the NFL Plan is located in Baltimore; the NFL Plan's lawyers who offered to settle after suit was filed are based in Washington; defendant Smith and his partners with knowledge of the fee agreement live in or near Baltimore and Washington, D.C.;[4] and the relevant documents are here as well. Finally, since Maryland law concededly sets the standard of conduct for Smith in this case, any expert witnesses are likely to be located in Maryland or its environs.

In cases like this, transfer under § 1404(a) is almost always the right course. As the court held in Engel v. CBS, *supra*,

> The underlying lawsuit, which this Court has already found is the substantial event giving rise to the claim, occurred in New York. Moreover, the Ninth Circuit has ruled that New York law governs this action. The United States Supreme Court has held that "[t]here is an appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems ... in law foreign to itself." Van Dusen v. Barrack, 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964).

---

[4] Of course, the convenience of these non-party witnesses is entitled to substantial weight in the § 1404 analysis. Zalutsky, Pinski & DiGiacomo v. Kleinman, 747 F. Supp. 457, 462 (N.D. Ill. 1990) (where third party witnesses were located in transferee forum, and plaintiff "could not identify a single person other than themselves who would be inconvenienced by transfer" of the case," transfer granted).

886 F. Supp. at 733. The Engel court found that transfer under § 1404(a) was proper independent of § 1391, because – exactly like this proceeding – "This case does not have strong roots in California." *Id.* So too, in Couri v. Fisher, 147 Bankr. 349, 357 (Bankr. S.D.N.Y. 1992), the court directed transfer to California under § 1404 in attorney-client dispute even though the case did not raise "complex or unsettled principles of California law." Despite that fact, "California does have an interest in resolving a controversy involving allegations of malpractice defined by California law and asserted against attorneys licensed in its state." *See also* Clark v. Kick, *supra* (denying transfer under § 1404(a) out of forum where the underlying case was prosecuted); Stratagene v. Parsons Behle & Latimer, 315 F.Supp.2d 765, 771-772 (D. Md. 2004) (same).

## III. CONCLUSION

For all of the foregoing reasons, venue does not lie in this District. This Court should either dismiss the action or, pursuant to 28 U.S.C. § 1406(a), transfer it to the U.S. District Court in Baltimore, Maryland. In the alternative, this Court should exercise its discretion to transfer this case under § 1404(a) to the District of Maryland.

Dated: February 12, 2008

KEKER & VAN NEST, LLP

By: /s/ David J. Silbert
DAVID J. SILBERT
Attorneys for Defendants
CYRIL V. SMITH and ZUCKERMAN SPAEDER LLP